Can we call the case please? 15 Jan 20054, Charlie Knocknick v. JL Woode Management Company Will the attorneys presenting the argument please approach and introduce yourselves? Good morning, my name is Burton Lane. I'm here for the Plano Public. Good morning, Mr. Ring. Good morning, Your Honors. Jeffrey Whitman on behalf of the appellants. All right, gentlemen, we typically allot 15 minutes per side. We can be a little bit flexible, but it's a pretty concrete issue here. Hopefully we can keep it within the 15 minutes. Mr. Ring, would you like to reserve some time? Yes, I would. Okay, we can certainly do that for you. Mr. Ring, whenever you're ready. Thank you. Thank you. Today I'd like to start with the Section 170 argument, as the case is divided into the consumer fraud aspect and the RLTO Section 170 summary. In this case, the summary was incomplete for the first lease and for the... Mr. Ring, did Judge Allen have both what the city's version of the summary under the RLTO is and the two-page summary that Hawthorne House gave him? Did the court have both of those in deciding the summary judgment? Or 619, I'm sorry. No, he did not. I mean, at least as part of the pleadings, I'm sure he had it available to him online or somewhere else. But the parties didn't make that as part of their pleading? Because I was looking for it and I didn't see it. Right. No, that's a good question because that makes it all very confusing. One, you can look at the old summary and not know it's the old summary, except in this case you have the picture of Mayor Daley on it instead of Ron Emanuel. That would be the first way you can determine it's the old one. But they only gave one page of the summary when it's two pages long, excluding the interest rate disclosure summary. So but for that Mayor Daley picture, that would be the only way to really assume that it's not the most current one. But they do change it at the City Council, and now it's the Department of Planning that's charging that responsibility. Let me ask you then, under this, let's say they update it every year, the summary that's required. So is it incumbent under the RLTO for any landlord to get the newest summary, including what that interest rate is, and then attach that each and every time they're renewing the lease? Is that your argument? Yes, that's part of what the statute says. It says both for the renewal and the second part of Section 170, it must be given for the renewal. And if there's an oral lease, it must be given as well. So if it's not attached to the written one, it must be given for the oral lease. So as a matter of fact, the summary... So if they're going month to month, they still got to do that? They do, and that always presents an interesting question for the trial court. If it's a month to month, you give it every month, if you give it once a year, you give it when it changes. Or if your lease starts in July and the summary changes in January or whenever the city changes it, then are you required to go seek out your tenants? In that example, no. If you look at the statute clearly and the way it's written, only upon the first lease you have to give them if it's a written lease. And when the lease expires upon the renewal, then you must give everything else. And how many people are in your purported collects? Well, it's probably, I mean, there's 430 units and there's a regular turnover, so it could be, depending on how the class period is defined, if it's going to be a four-year period, it could be several thousand people. Okay. Thank you. Are you saying, Mr. Ring, that the summary that's current is two pages, not four? Sometimes they print it out or they have it available on a legal-sized paper on two sides. Sometimes they have it on this regular-sized paper. So the answer is, I don't know, depending on what kind of paper, if it's two-sided or not. But the summary in this case had specific provisions that were left out that are required under the city. Is that your argument? Yes. They only gave the one-page summary. So it doesn't really matter how many pages, you're just saying sections of it were left out. Yes. Are we talking about the 2010 version of the Act? Yes. The Act, the one they attach, I believe, is because they changed it in 2013 and they changed it again in 2016. That's why I'm asking. So I think they gave the old one from 2010. That's what they did in this case. And that section has two different summaries in it, right? It's got a summary of this chapter and it's got a separate, it also requires the preparation of a separate summary describing the rights and obligations, etc., relating just to security deposits. Is that right? Yes, the interest rate. Because when you look at how they drafted their argument and they changed it, in 1997 it was they changed the interest rate from the 5% standard to match the state's one to a fluctuating every year it changes. That's when they made the amendments to have the interest rate disclosure added into the summary. Okay. Fair enough. But then later in the text it says, a copy of such summary shall be attached to each written rental agreement. And obviously your opponents are arguing that when it says such summary, that they're referring to the immediately preceding summary, the security deposit summary, as opposed to the overall summary. What is your response to that? What's your textual argument? There's three responses to that. First of all, if you look at the title itself, it says summary of the ordinance attached to rental agreement. It doesn't say summaries. Okay. When you look at the way the ordinance is written, that section, there's no section A, there's no section B, it's just one section. Also, when you look at how it's worded. How does that help your position? Well, they could have said, like, for instance, in the Faisal versus RTFX case, they talk about the different subsections related to what words apply to which provisions of the landlord obligations. Here, for instance, when you look at how section 170 is worded, when you look at the interest rate disclosure, what's kind of curious to everybody is that the first language that they have separated out in the summary of section 170, guess what, it's in the interest rate disclosure section. And it should not be in the interest rate disclosure section. It should be in the first section. But that's how the city prints it out. And there's another situation where the city is now using the summary, not to just give links about the RLTO, the language itself in section 170 really shows that they want to use the section, the summary, to give information out to tenants. How many sections are in the RLTO? The RLTO, it goes to section 180. So, I don't know, there's like 20 sections. When the act was first passed and there was a requirement for the summary, the summary actually detailed most of those sections, didn't it? Yes, it does. Okay. Wouldn't it have been simpler if you had presented maybe the summary that you thought was supposed to be attached or at least presented it at the time so that the court could see that this summary that you attached to your complaint was really a summary of a summary? Isn't that what was troubling the trial court? You presented a summary with your actual complaint. And the summary was, I guess it just has mostly the security deposit information, right? It stops at section 080 and doesn't have anything after 080 from 90 to 180. Right. So there's multiple sections. But, I don't know, maybe you haven't really answered Justice Ellis' question, but your opponent is arguing that there was a change in 2010 and will say that's the appropriate statute and that the language says a such summary really just following the security deposit thing, the security deposit provisions, I should say, and that there's really no requirements for this other entire summary. The other problem with their argument is that when you look at their own lease itself, they don't even have that on their lease. They have a box saying R02O summary. If they really were going forward with that argument, they have no facts to support that argument. They would have had another section saying RLTO interest summary disclosure on their lease. It has the opposite. So their argument conflicts with their own lease itself. Well, is it your position that the RLTO summary that's available for anyone to review and which you believe is something that has to be attached to every lease, is that available online? It is. Does it have a summary for most of the provisions of the RLTO as opposed to just devoting itself to security deposits? It is. As a matter of fact, when you look at the section of the web that the City of Chicago does, they even have the language, and the language is clear that says that this must be attached to both the initial lease and the renewal lease. They even have a safe harbor section on that same section when you look at it online. They even say that, note on March 17, 2016, the City updated the RLTO ordinance summary required by MTC Section 5-12-170 to add the Section 101 about the bed bugs. The City does not regard the RLTO ordinance summaries attached, otherwise provided by Land Rights, prior to June 1, 2016, that do not include this new reference as violating Section 170 solely as a result of that omission. So the online materials put together by the City already has that discussion. You must have the whole thing in there on these summaries, both sections. Now, if you're just omitting one section, that little thing, they say they have a safe harbor section right there. Mr. Ring, it's a purely textual argument. I think Justice McBride touched on it, and so did I. There are two summaries listed in 5-12-170. The commissioner has to prepare a summary of the chapter and a summary of the security deposit. After talking about the security deposit, there is another sentence that talks about the commissioner having to reach out through PSAs and television to broadcast the new interest rate information, and then it says a copy of such summary. Now, such summary is singular, is it not? They're talking about just one of the two summaries there, are they not? I agree with you. Okay, so which one is it? You obviously say it's the one that comes at the beginning of the chapter, and your opponent is saying it's the one that sort of immediately precedes it. Give us your best argument for why we should read it. Not what happened in court, but a textual analysis. Why should we read it your way? So from a textual analysis, the next section says the summary shall include the following language. When you look at the summary itself, that porch language safety rule is not contained in the interest rate disclosure section. It's contained in the original, the first part. Absolutely. And the second argument is that it says summary of the ordinance of taxamento agreement. So you've got this last language, and you've got the title. Do you have anything else? I'm not demeaning that. I just want to give you a chance to give your whole argument on this. If you want to hear anything else, you'll have to tell us about that. When you look at the Faisal case, and we studied that case in our brief, they talk about the various subsections. Here there's no subsection. There's no A. There's no section B. And there's no, Lawrence really said there's no exceptions, and you have to really look at this in a liberal way to construct the RLT on section 010. But didn't Lawrence only address the security deposit issue and not the summary that you're looking for? You're correct. They only addressed 080, but they also said clearly there's no exceptions. You can't add words. You can't omit words. You can't have any limitations. And so they were very clear on that. And this is a consumer ordinance, and it really should be directed in favor of more information, more disclosures to the consumer. And the legislative purpose is clearly shown when they added the porch line. As a matter of fact, as we sit here today, in October 2016, there's a pending another resolution in the city council to add that there should be some voter registration information put into section 170. Now landlords are in charge of getting them to vote? In September of 2016, there's a pending ordinance amendment to the 170 that has nothing to do with RLTO that says that must be in the ordinance. Do they have to give blood too? That's my reasoning is that it's set up to give information by the landlords to the tenants. And that's why you have the porch summary in there. That's why you have the new pending resolution about voting rights that's coming up for votes soon in the city council. It's just giving more information. If you look at the two different ways to provide information, and that should be taken as looking at these two different ways to give the information, there's no way you can actually start reading the entire summary on a radio or TV commercial as they talk about in the interest rate disclosure. They just say that it should be given to the available for publication. And so it's really important that they give this to the tenants, that summary. Does the bigger summary of the chapter, I assume that does contain within it information about security deposit as well? They do, but not the interest rate at all. They have the sections, one, about prepaid rent, interest is due, and how the landlord should keep the deposit. Okay. When you look at really the other aspect, when you look at... Maybe just another minute, and then we'll give you some rebuttal time. But go ahead and finish your talk. The other thing is looking at the penalty amount itself, which is just $100. You're comparing that penalty to, for instance, if the landlord pays interest timely, but the wrong amount, they have in Section 080F2 a safe harbor provision that it's only a $50 penalty. Here it's only $100. You'll never change that from 1986 to the present time. What about your 60 days? You say in your unfair deceptive practices, actually unfair, that the landlord has more time than the tenant, but the actual lease has 60 days filled in. Is there any question about that? Definitely, there's a lot of questions. The problem when you read the whole lease, it has... So, for example, let's just assume that 60 days is in there, and 60 days is what each the landlord and the tenant has. Is that unfair? No, and you're misreading it. No, I wasn't asking about misreading it. I just meant if it does say 60, and the tenant and the landlord each have 60 days, is that unfair? If that was the whole issue, that would not be unfair for the consumer. Well, I understand your argument. I want to ask you about the 452, the amount that you said she was billed. All right? Now, that was never paid? It was not paid. Don't forget we have the voluntary payment doctrine in consumer fraud cases. Don't you... I mean, I'm not sure if I understand the voluntary payment doctrine the way you do, but you can always pay something under protest, can't you? Well, no. The case law says that if you're going to pay it in protest, and then you have to have an evidentiary hearing on the protest and how it was done, whether it really legitimizes and safeguards your right to still contest that. Did you attach a bill to your complaint? You said she was billed $452.50. Right. Was there a bill of her? There was not attached 606 of the Code of Civil Procedure. No, but does she have a bill somewhere? Yes. But she never paid you? No, she did not. And you're withdrawing your unjust enrichment account, aren't you? Yes. Because you didn't argue with her? Right. All right. Okay. So did the trial judge have the bill to look at? No, this was a combined 619.1 motion he decided on a 615 basis, and so a lot of these things... I thought that consumer fraud was 619. No? It was the 615? With prejudice? Yes. I used no leave to amend. But when you look at the way the lease is constructed with these various sections, if you look at Section 3 that says 60 is for the tenant but 30 for the landlord, they reference Section 35. But then you also have another section about default, which is Section 31, which is not set out in Section 3 or Section 35. What does 31 say? It says that if you don't give the notice under Section 3 as interpreted under Section 35, you're in default. If you're in default, then automatically you have to pay the double rent or the 25% extra rent in that period of time, and the landlord is not obligated to provide the notice that they're supposed to give under Section 3. Then you look at the Section 14, so the tenant has to give 60 days' notice to renew not knowing how much the rent is because the landlord under Section 14 does not have to give notice until five days before his 30-day notice is required. So there's a 25-day window period where you renew your lease, have no idea how much your new rent is, then he says it's going to go up some amount you can't afford, then you have to say, you know what, I want to give my notice of termination, and then you have to pay the extra 25 days of extra rent because you have to give the 60 days' notice. You know, 25 days already went by. You've also got 25 days of which those 25 days, you've got to pay the additional holdover rent, as talked about in the default Section 31, which is not referenced in Section 3 or 35. A reasonable consumer of reading at this lease, which is no ability to do any bargaining on this oil plate, is really at a much risk of not really understanding it. With all these different sections, not even cross-referenced with the sections, it's a very confusing lease to the average consumer. Thank you. Okay, thank you, Mr. Ring. We'll give you a few minutes for rebuttal. Mr. Whitman? I'll give you your honors. Okay, please, the Court. I'd like to start out addressing the summary issue, since it appears the Court's focused on that. The trial court's dismissal should be affirmed with respect to the summary issue. As Your Honor noted, Section 5-12-170 specifically references two separate summaries. Notwithstanding the fact that the title of the subsection is in the singular, the body, the language in the body of that section of the ordinance is very clear that the Commissioner of the Department of Planning and Development shall prepare two separate summaries. The first, which is a general summary of the ordinance, merely needs to be made available for public inspection and copying. It is the second separate summary that needs to be provided by landlords to their tenants. When this ordinance was first passed, that summary was rather extensive, wasn't it? It actually summarized the various provisions of the RLTO, did it not? When it was first passed in the 1990s, Your Honor? Yes. Yes, it did. And were individuals getting basically kind of a four-page summary with all the explanations of the different provisions of the Act? Wasn't that a requirement that landlords had to tender that summary with the former mayor, Mayor Daley's picture on it? I don't know how many pages it was, but yes, there was a single summary that was referenced in that version of the ordinance. And it had all of the provisions. It summarized every provision of the Act, didn't it? I don't know. I would suspect it did. But you think that the city actually changed their whole plan and only wanted to focus on the security deposits? That's what it says. And isn't it a fact that most of the landlords don't even have security deposits anymore because it was so cumbersome and so burdensome that now a lot of leases, in fact, this woman here and most people in the building, they don't even have security deposits, right? That's correct. So what would be the point of having a provision to tell everybody about security deposits when most landlords have given up on that whole idea because it was so burdensome and cumbersome? So why would the city really have a focus on make sure you give them a thing about security deposits because that's a burning issue? Your point's well taken. I don't have an excellent response for that. All I can tell you is this is what it says. All right. What about the summary that's available online? Is it just the one that she attached to her complaint or is there this summary that actually details the various provisions of the RLT? There are two. If you go online, there are two separate summaries. Oh, there are? Yes. Okay. All right. So that would support your position that when they said such summary, they only meant the one that talks about security deposits and now the porches and the bed notes. Yes. Okay. All right. So, Mr. Woodman, I assume you, if we're looking at the 2010 version of this, I assume you would agree that the end of that section where they talk about the porch or deck, I assume we could all agree that they're not talking about security deposits there. Right. I mean, it's limited to porch or deck. Right. So we have this, a copy of such summary, which I think is the language you're seizing at. You're saying such refers to the immediate preceding summary. Right. But then it says the summary shall include the following language and it's got all this stuff that is clearly porch and deck. Right. Okay. So do you really think this is unambiguous? Do you really think it is just completely clear? Or do you think it is somewhat ambiguous? No, I think it is somewhat ambiguous. Okay. Well, I think it's ambiguous. I think it's very clearly drafted. Okay. And so I'm not sure a lot of people would argue that point with you. It was curiously drafted. If language is unambiguous, we resort to rules of construction, right, just like we would any other statute? Yes. Okay. Well, aren't we supposed to liberally construe these statutes in favor of the tenants? You are. So why would that not lead us in the face of an ambiguity to rule in favor of Mr. Ring, Mr. Ring's interpretation? Two reasons. Number one, I think when you focus on the language in this section that requires the landlord to provide the summary to the tenant, it's very specifically limited to the security deposit summary. If you look just at that section, that's what it says. But the broader issue is even if you reject that argument and say, look, city council kind of messed this up and has created an ambiguous provision, we submit there's substantial compliance with the provision anyway. Does the statute allow for substantial compliance? So let's say you don't have a porch or a balcony.  Does it provide for those kind of? It doesn't. But this particular summary that was attached, first of all, two summaries were attached to the lease that was attached to the complaint. And the porch language is in that summary. Their argument is, look, you photocopied the first two pages, but not the last couple of pages. But the point is, to answer your question, yes, substantial compliance is allowed. Has any case ever permitted an interpretation of substantial compliance with the RLTO? Yes, Plomback, which is what we cited. We both cited, but we cited for the proposition that substantial compliance is allowed. All right. Well, let's assume that that case suggests you could actually have a hearing of that nature. In this case, the section 170 part of his complaint was dismissed for failure to state the claim, 2615. Yes. Now, he says this other summary, which is available online, was supposed to be attached to the lease. You say that the city council changed this whole kind of notion, and now they just want this other summary. On a 2615, should he be allowed to replead, and then perhaps you move under 2619 and actually, I don't know if you could really resolve this on material questions of fact, but should a court dismiss this first time, first complaint on failure to state a cause of action when you two are standing here telling us that the ordinance requires the summary, and you say the ordinance does not require the summary? Is that a question of material fact? Does that ever come to play in a 2615? Not in this particular situation, and here's why. We're obviously arguing, making two arguments. One, you don't need to attach it, but two, even if we didn't attach what was supposed to be attached, there's substantial compliance. Is that a question of fact? No. I think that's a question of law. If you determine that — Was it dismissed on that basis? Did Judge Allen say, well, this is substantially compliant? Yes, he did. Did he do that on a 2615? Sure. I don't think so. You tell me a case that says he can decide there was substantial compliance on a 2615. He ruled that the summary that was attached to the lease, that was attached as an exhibit to the contract, satisfied the requirements of the ordinance. Yeah, and you think that's something you do under 2615. I thought 2615 was failure to state a claim. No set of circumstances, no set of facts. Right, but under 2615, if an exhibit contradicts the allegations that are pled in the complaint, the exhibit clearly controls, and a case can be dismissed under 615 on that basis. But the question that Justice McBride is getting to is there's two different summaries out there, right? The one that you attached and the one that counsel says, Ms. Ring says, the city requires. Did the trial court have the benefit of both of those summaries to see whether that was sufficient to be substantial compliance? And if he did, then why couldn't he re-plead that? Because if you accept the substantial compliance argument, there's nothing to re-plead. You can make the determination this was attached and that satisfied the requirement. What are you going to amend it? Well, he should be allowed to re-plead, should he not, that the ordinance requires summary A. We originally pled it as that this summary was not the summary, and so he should be allowed to re-plead to argue his position that the ordinance requires a complete summary. And then you say, no, that's not the summary that's required. Then you have a 2619 in front of the judge. But he's never been able to argue that there's actually this other, or he's never been able to plead, rather, because this was his first complaint. He's never been able to plead that the ordinance requires this other summary. That's all. He did make that argument before the court, and as the transcript of that oral argument makes clear, the judge rejected it. So it was, while he didn't plead it, and he asked to be able to make additional allegations and clarify in his complaint, what Judge Allen said was it doesn't matter. You can add all those facts if you want, but I'm ruling that the two summaries that you attach to your complaint don't give rise to a cause of action. Well, but if we're looking at this as, you know, pure 2615, and let's just assume that Mr. Ring is correct, that there is actually a summary out there that's supposed to be attached that wasn't the summary that was attached in this case, then shouldn't we allow him to re-plead? We're looking at this de novo. I mean, if he's accurate, if he's correct, rather, that there's actually a summary that actually details all of the other sections of the RLTO that wasn't attached to this particular lease, shouldn't he at least be allowed to plead that in the first instance? I don't think it makes any difference. The court considered it. He's correct, but he didn't decide this on a 2615. He decided that you have the summary. It's attached to your complaint. You can't unring the bell, and that's it. But the fact of the matter is what if Mr. Ring is actually correct and that there's a summary that wasn't properly attached? Isn't that how the case should proceed? I don't know how a judge can determine as a matter of law that this notice or this summary was a summary if there's this other possible summary out there. What Judge Allen said is it doesn't matter. Okay? He ruled that what was attached satisfied the language. Substantial compliance. It's a substantial compliance ruling. I mean, that's basically what he said was, look, you've got these two different leases, I'm sorry, two different summaries. They were attached. I find that what was attached satisfies the provisions of the ordinance. Then he would actually be deciding a question of material fact, in my opinion. He did. Yeah. He did. And you're saying there is no question of material fact. And if Mr. Ring's allegations are correct, there is actually a question of material fact that cannot be decided as a matter of law. Well, what we're saying and what the judge said is it doesn't matter. Because he said, in addition, this substantially complies. Yes. And that's generally a question of fact as well. Whether something substantially complies is usually a question of fact. If you don't have both documents in front of you, I don't know how you would say this substantially complies. But anyway, well, that's my thinking. Obviously, we would respect that. What about this second count, you know, the voluntary payments? How do you respond to that? Well, as I think your Honor had asked, payment, if it were made, could have been made under protest. I mean, she didn't suffer any damages here. I mean, she didn't make any payments. And that's obviously with respect to Paragraphs 3 and 35 and 13 and 31. But I think on that count, the lease is pretty clear that both sides need to provide 60 days' notice. That's in Section 3. And this trap that they're alleging just doesn't exist. I mean, it doesn't even make sense. What they're trying to argue is if they give 60 days' notice of an intent to stay, then we can come in and terminate the lease. But there is no 60-day notice requirement for an intent to stay. It's just an intent to leave. That's the only requirement that the 60 days imposes upon tenants. And, in fact, the class that she's seeking to certify would consist of tenants who gave less than 60 days' notice to leave. Well, we're not really here to decide anything about class allegations, are we? We are not. And, in fact, I believe they've waived those arguments because they haven't made them. Well, I don't know about that. This class was never even certified. No, the case was dismissed. Yes, I understand. Okay. So just to wrap up, the interest rate summary, we also make the argument in our brief, obviously, that there was no security deposit here. So what legitimate purpose does this section serve vis-à-vis Ms. Kotnick when she doesn't even have a security deposit? So even if you accept the notion that this is an outdated summary with respect to the security deposit, we're saying it doesn't matter because the ordinance is to be construed to protect the tenants. And what interest are you protecting for a tenant who doesn't even have a security deposit? So, you know, whether it was a year old, quite frankly, it really doesn't matter. She wasn't harmed in any way. And we cite the Beal v. Gingrich case for, you know, in talking about strict compliance, and there's a two-part test. One is, is the purpose of the statute or the ordinance achieved? And two, has the plaintiff suffered any prejudice with substantially complying with that? Obviously, with respect to the security deposit, we argue, no, of course, the purpose was achieved. She was given a summary of the interest rates. But two, even if it was a year old, there's no harm. And quite frankly, the same holds true for whether or not the summary that they're alleging was insufficient of the ordinance in general also satisfies both of these. Number one, what is the purpose of giving a summary of the ordinance? Do you need to provide every single section of that ordinance? Quite frankly, the section doesn't say that. The section only requires one thing in the summary, and that's the porch language. And that was provided. Number two, was she harmed? No, she wasn't harmed. She had at least two pages, at least that's what they attached to their complaint, at least two pages which advises her of the existence of the ordinance itself, that the ordinance provides tenants with certain rights, and that if she wants to see the full ordinance, it's available for copying. So we believe substantial compliance applies to both of the summaries. Thank you. Thank you, Mr. Whitman. Mr. Ring, you have a few minutes. Thank you. Sure. The argument is senseless because they're saying I don't have the value of the interest rate disclosure, but they concede that there was no security deposit given. So you should give some disclosures and not give others, even though there's no security deposit. But their argument makes no sense for additional reasons. Everything should be given to all the tenants. Whether or not you don't have a DAT, whether or not you don't have a porch, it's very clear. You've got to give the porch summary. Does it say where you should give the porch summary and the interest rate disclosure in the first part of the summary, the last part? No, it doesn't. And when you look at the language itself, when they made the amendment to add the interest rate disclosure, they could have then said the previous summary is not required to be given. Actually, when you look at the language itself, in the third line of that, it says they should disseminate that information and provide it and shall make the summary available for public inspection and copy. They didn't have to have that word conjunctive and in there. They could have just said make it available for inspection and copy and not give it to each tenant. They also had other opportunities after that date in 2010 to change the summary itself. But clearly in every part of the summary, it says on the top, right after the line of manual stamp, it says initial offering, the summary of the amendments must be attached to every written rental agreement and also upon initial offering for renewal. The summary must also be given to a tenant initial offering of an oral agreement, whether the agreement is new or is renewal. Unless otherwise provided, all provisions are effective this date. And they also said when they made the change from the housing economic development to the planning development, they made that amendment to the words of the ordinance in 2013. Why would the city then designate a new department to work on the wording of the ordinance if it doesn't have to even be given? Are we required to discern what the city's motivations are? Because that could be, that could take a while. It could, but just because they want to have the, they change it in 2013, they have the bed bug information in there. They added that, and that was part of the ordinance in 2016, but that law came out in 2013. They have the porch information in there. Now they're adding the registration for voters, how to properly register to vote. They're using this to really have the landlords tell the tenants information that's important. The last thing I want to point out is that the plan-back case specifically said that even the minutes exception is still actionable. It doesn't give the right for substantial apartments in anywhere. And all the consumer-led case, Magnus and Moss, always says that you have to give everything together. When you really look at substantial apartments, you're really saying, well, I really did the best job I could. But Lawrence says the opposite. Lawrence says, no, you have to really do exactly what it says. There are no exceptions. My final point is about the consumer fraud is it allows injunctive relief and declaratory relief. We can have the court ask to change the lease to make it more clear, admit it, rewrite it, do other things. We have the way for injunctive relief, even if she didn't suffer any monetary damages. But you have to, when you're starting to read the lease and when you're looking, learning your opinion, just take 10 minutes to look at the lease itself, all these various changes, and the paragraphs that are discussed, and how they look at that. When you look at the different paragraphs, 3 references 35, 13 discusses 31, 14 is about the 5-day period before the 30-day for the landlord, but conflicts with Section 35. Section 15 talks about the delays in occupancy, but it cross-references Section 13, about a 3-day notice for there. You have Section 31 about default, and if you don't give notice, what happens in Section 22 or 35? This is really even more cumbersome than a commercial lease. When you're only doing your prior practice before you became Justice Sotomayor, you look at commercial leases, and those are much more complicated. But nothing near the complications set forth in this kind of lease with the cross-references. No reasonable consumer can really understand what they must do, and Section 3 requires not only the notice, but the acknowledgement in Section 35 and 36. The landlord has to provide an acknowledgement to the tenant that he got the right exact notice. Now, if you move out one day late, and it's not specified in your notice, you say I'm moving out on October 31st, you move out on October 30th, you're deemed in default in terms of a lease. That's Section 31. And so then you have to wait a whole other way for at least one day. That's what the lease says. Thank you for your time. Thank you, counsel. Very interesting case, very well-argued and briefed. We thank you for that, and we'll take it under advisement and stand at recess.